MILLIMET CONSTRUCTION CO., INC., PLAINTIFF-APPELLANT, v. THE BOARD OF EDUCATION OF THE TOWN OF BLOOMFIELD IN THE COUNTY OF ESSEX, NEW JERSEY, DEFENDANT-RESPONDENT.

Submitted October 6, 1942—Decided January 22, 1943.

For the plaintiff-appellant, *Armstrong & Mullen*.

For the defendant-respondent, *William Huck, Jr.*

The opinion of the court was delivered by

THOMPSON, J.  Millimet Construction Co., Inc., contracted with the Board of Education of Bloomfield to build a high school.  The contract provided:

"14.  *Temporary Heat.*

The contractor shall provide temporary heat sufficient to maintain a temperature of sixty (60) degrees throughout the entire building from the time the plastering is started until the completion and acceptance of the work under this contract.

He shall provide all necessary fuel and electric current, shall pay for all necessary temporary radiator connections and attendance of every nature, and shall make all repairs and replacements made necessary by use of the heating appartus.

Should temporary heat be required for the protection or drying out of the work under this contract, or the work of other contractors before the heating apparatus is available for use, the Contractor shall provide approved salamanders, stoves with smoke pipes to exterior, or other approved heating devices, with all necessary fuel and attendance, sufficient for the protection or drying out of the work.

The electrical contractor will provide attendance for electrical work in connection with temporary heat."

The contract was by its terms to be performed within 270 days from the commencement of the work on the date to be specified in the order of the architect as the date of such commencement, unless such period of performance should be extended "as hereinafter provided by the Owner."

The contract further provides:

"9. *Extensions of Time; No Waiver.*—If the Contractor shall be delayed in the completion of his work by reason of unforeseeable causes beyond his control and without his fault or negligence, including, but not restricted to acts of God or of the public enemy, acts or neglect of the Owner, acts or neglect of any other Contractor, fires, floods, epidemics, quarantine restrictions, strikes, riots, civil commotions or freight embargoes, the period hereinabove specified for completion of his Work shall be extended by such time as shall be fixed by the Owner."

"No such extension of time shall be deemed a Waiver by the Owner of his right to terminate the Contract for abandonment or delay by the Contractor as herein provided or relieve the Contractor from full responsibility for performance of his obligations hereunder."

It was stipulated at the trial below and on this appeal that the "proceed order" was given by the architects, fixing the commencement date as December 27th, 1938, which would have made the completion date limit (270 days) September 22d, 1939, and that the respondent owner granted extensions of the completion date "in accordance with the terms of the contract," to June 29th, 1940; that "said extensions were granted under the terms of said contract by the defendant [respondent] and its agents to the plaintiff [appellant] by reason of delays in the progress of the work resulting from causes beyond the control of the plaintiff; namely, strikes by electricians and steel workers, and delay in the delivery of the structural steel, and this delay, in turn, delayed the work of the mechanical trades and affected the entire completion of the building; which electricians and steel workers had separate contracts with the defendant, and over which contracts the plaintiff had no control." It was also stipulated that on June 29th, 1940, the general contract was completed and the building accepted; that on November 24th, 1940, the whole balance due the contractor was paid with the exception of $8,776.32 which the owner declined to pay because the contractor had refused to furnish temporary heat for a period during the progress of the work and the owner was

obliged to furnish it at a cost of $8,776.32. There is no dispute as to the amount of the cost of the temporary heat, nor as to its necessity, but the contractor disclaims liability therefor. The case was tried below by the court without a jury on the pleadings and stipulations of the parties. The court found that the contractor was obligated by the terms of the contract to furnish the heat and rendered a judgment in favor of the owner.

The issue is one of interpretation of the terms of the contract under the stipulated facts. We think the contract clearly imposed upon the appellant the duty of providing temporary heat from the time plastering was started until the completion and acceptance of the work. The contractor contends, however, that the period within which it might have been required to furnish heat expired 270 days after the work commenced, because the failure to complete within that time was due to causes beyond its control; that the additional time to complete, being granted by extensions which were the acts of the owner, the contractor was thereby absolved from responsibility for heating the job after the first 270 days had elapsed. The force of this reasoning is not apparent. The contractor assumed the duty to heat, when necessary, from the plastering operation to completion and acceptance. What might occur in the course of the construction to prolong the completion, and thus necessitate heat at some stage thereof, was a risk assumed and inherent in the undertaking. Extensions granted by the owner were a concession to the contractor, and did not work a forfeiture of the owner's contractual rights. The contractor's obligation was not enlarged by the extensions. They were granted to save it from penalty and related only to the matter of time, which had been agreed to be of the essence. They did not expunge any other part of the agreement. The judgment will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, COLIE, DEAR, WELLS, RAFFERTY, HAGUE, THOMPSON, JJ. 15.

*For reversal*—None.